IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| FRED MANESH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-233-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| TOKYO ELECTRON AMERICA, a | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Glenn Solomon
400 S.W. Sixth Avenue, Suite 600
Portland, Oregon 97204

    Attorney for Plaintiff

Carol J. Bernick
Carol A. Noonan
Davis Wright Tremaine LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201

    Attorneys for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Fred Manesh claims defendant Tokyo Electron U.S. Holdings, Inc. ("TEL")[1] unlawfully terminated his employment. Plaintiff claims the termination constituted unlawful discrimination against an injured worker, and discrimination against him for applying for workers' compensation benefits. Before the court is TEL's Motion for Summary Judgment (#13).

## FACTUAL BACKGROUND

Plaintiff became employed by TEL as a Field Service Engineer in mid-August 2004. As a Field Service Engineer, plaintiff installed Lithius equipment onsite for TEL's clients, which involved "adjusting robots, docking, cabling and heavy lifting." Pl.'s Dep. 14:23-15:2. The job was very physical. Plaintiff estimates that he spent 99% of his work time performing strenuous manual labor. On or about November 17, 2004, plaintiff suffered an on-the-job injury while installing equipment. He first reported an injury to his wrist and elbow the next day. Following his on-the-job injury, plaintiff presented TEL with a doctor's note restricting the work he was able to perform.

After that time, plaintiff worked light duty doing computer work. On or about December 8, 2004, plaintiff reported that his on-the-job injury to his wrist and elbow on November 17 had also caused a hernia in his groin. Plaintiff continued on light duty until he had surgery for his hernia on January 5, 2005. Plaintiff took a leave of absence from work.

Plaintiff received a letter from TEL dated January 31, 2005, along with a form entitled "Leave Without Pay Request." The letter stated, in relevant part:

---

[1] Plaintiff's complaint refers to defendant as Tokyo Electron America.

Page 2 - OPINION AND ORDER

> To insure your compliance with Tokyo Electron America, Inc. policies and procedures, you are required to submit a *Leave Without Pay Request* form. On January 3, 2005 you were asked to submit the paperwork by January 4, 2005. To date I have not received your paperwork. You are required to submit the *Leave Without Pay Request* form to my office no later than February 7, 2005. Your failure to submit the required paperwork jeopardizes your future employment relationship with Tokyo Electron America, Inc.

Aff. of Glenn Solomon, Ex. 1. The "Leave Without Pay Request" form states, in relevant part, "An employee returning from leave without pay not qualifying under Family Medical Leave (FMLA) or Military Leave is not guaranteed a job upon their return." Id. Plaintiff did not sign and return the "Leave Without Pay Request."

On or about February 7, 2005, plaintiff gave TEL a note from his physician stating that he was released to light-duty work as of that date. The restrictions stated that plaintiff was not to be on his feet for more than fifteen minutes each hour, and was not to lift over 25 pounds. The restrictions in plaintiff's February 7, 2005 physician's note prohibited plaintiff from being able to perform the functions of his job as a Field Service Engineer.

Upon reporting for light duty work on February 7, 2005, plaintiff was again asked to sign the "Leave Without Pay Request" form. Plaintiff refused to sign the form.

Although plaintiff's February 7, 2005 note indicated that his physician anticipated that plaintiff would be able to stand for more than 15 minutes every hour after February 14, and lift more than 25 pounds after March 2, 2005, plaintiff did not return to work on either of those dates and did not at any time tell anyone at TEL that he was able to work without those restrictions or that he was physically able to perform all of the duties of his position. Plaintiff was not physically able to perform the duties of his position on either February 14 or March 2, or for many months after that. Plaintiff did not at any time demand reinstatement to his former position

Page 3 - OPINION AND ORDER

after he became physically able to perform the job.  Plaintiff did not communicate with anyone at TEL after February 2005.  Plaintiff never reported to work again.

On May 20, 2005, TEL sent plaintiff a letter terminating plaintiff's employment, effective May 23, 2005, because the length of his leave exceeded the length of his service with TEL. Plaintiff's termination was consistent with TEL's leave policy which states that an employee will be terminated 180 days after his or her leave begins or when his or her leave exceeds the length of employment, whichever is sooner.

Plaintiff was not released for full performance of his job as a Field Service Engineer prior to the date of his termination.  Plaintiff does not know whether he has ever, since November 2004 to the date of his deposition, September 8, 2006, been released to perform physical work without restriction, or whether he could perform the job functions as a Field Service Engineer. Plaintiff has still not told anyone at TEL whether he is able to perform all of his job functions as a Field Service Engineer or demanded reinstatement.  TEL has not received notice from the insurer managing plaintiff's workers' compensation claim (or anyone else) that plaintiff had been released by his physician to return to work as a Field Service Engineer.

Since plaintiff began leave in January 2005, no positions within the restrictions contained in plaintiff's February 7, 2005 release for which plaintiff was qualified have become available at TEL.  Plaintiff never applied for any job with TEL following his termination.  TEL never asked plaintiff to return to work after February 8, 2005.

Between May 1, 2004 (approximately six months prior to the time plaintiff filed his claim) and April 30, 2005 (approximately six months after the time plaintiff filed his claim), 13

Page 4 - OPINION AND ORDER

employees at the TEL location where plaintiff worked filed workers' compensation claims. Of those 13 employees, plaintiff was the only worker who was terminated involuntarily.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. <u>Universal Health Services, Inc. v. Thompson</u>, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.  <u>The Events of February 7, 2005</u>

The parties' disagree about what occurred on February 7, 2005. Plaintiff remembers that he was sent home because he refused to sign the "Leave Without Pay Request" form, and TEL reports that he was sent home because the company had no light duty work available for him to do.

TEL offers the statement of the Vice President of Human Resources that plaintiff's supervisors sent him home because there was no light duty work available. Plaintiff testified in his deposition that he was sent home because he refused to sign the "Leave Without Pay Request" form. Since there is a dispute as to the facts, I deny TEL's request that I rule as a

matter of law that plaintiff was sent home because there was no light duty work available for him.[2]

II.    <u>Violation of ORS 659A.043</u>

Plaintiff alleges in his Complaint that the termination of his employment violated ORS 659A.043(1) and constituted an unlawful employment practice under ORS 659A.043(4). The applicable statute reads, in relevant part, as follows:

> (1)  A worker who has sustained a compensable injury shall be reinstated . . . to the worker's former position . . . upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position. . . .
>
> . . .
>
> (3)  Notwithstanding subsection (1) of this section:
>
>> (a) The right to reinstatement to the worker's former position under this section terminates when whichever of the following events first occurs:
>
> . . .
>
>>> (F)  Three years from the date of injury.
>
> (4)  Any violation of this section is an unlawful employment practice.

ORS 659A.043.

It is plaintiff's obligation to request reinstatement. ORS 659A.043(1); OAR 839-006-0130(5); OAR 839-006-0150(2). Assuming plaintiff demanded reinstatement when he appeared at work on February 7, 2005, plaintiff admits he was not physically capable of performing the

---

[2] I acknowledge TEL's argument that plaintiff disputed TEL's summary of events in his Response to the company's Concise Statement of Facts without citing to evidence of his own, but I rely on plaintiff's additional facts supported by deposition citations in which he sets forth his version of the story. See Plaintiff's Concise Statement of Facts, #7.

Page 6 - OPINION AND ORDER

tasks required by his former position.  Plaintiff concedes that he never demanded reinstatement to his position at any other time.  Plaintiff does not know whether he has ever been released to perform physical work without restriction.  In sum, plaintiff presents no evidence to support a finding that TEL violated his reinstatement rights and, accordingly, this claim fails.[3]

III.    Violation of ORS 659A.040

Assuming for purposes of this motion that plaintiff was discharged because he refused to sign the "Leave Without Pay Request" form, plaintiff argues his termination was an "unlawful employment practice" under ORS 659A.040 because he was discharged while he had a right to reinstatement.  He also argues that his employment was terminated because he refused to sign the "Leave Without Pay Request" form, believing that it conflicted with his statutory reinstatement rights, and this shows he was discharged for invoking the workers' compensation system.[4]

To establish a *prima facie* case under ORS 659A.040, plaintiff must show:

(1) that the plaintiff invoked the workers' compensation system;

(2) that the plaintiff was discriminated against in the tenure, terms, or conditions
of employment; and

(3) a causal link between the two (that is, that the employer discriminated against
the plaintiff in the tenure or terms of employment *because* he or she invoked the
workers' compensation system).

Hardie v. Legacy Health Systems, 167 Or. App. 425, 432, 6 P.3d 531 (2000).

---

[3]Plaintiff does not allege violation of ORS 659A.046, the statute requiring "reemployment" to other available and suitable work if the worker is unable to perform his previous job.  Even if he did assert a claim for violation of this provision, plaintiff does not dispute that TEL has not had any position become available within plaintiff's restrictions for which plaintiff was qualified.

[4]Plaintiff does not assert a wrongful discharge claim.

Page 7 - OPINION AND ORDER

Plaintiff's interpretation of the law to mean that TEL could never discharge plaintiff while he had the right to reinstatement is incorrect. The regulation implementing the statute implies that termination of employment for cause or at will, including pursuant to a leave without pay policy, is permissible.[5] OAR 839-006-0150 (e.g. an employee does not lose his reinstatement rights if "[a]n employer discharges the injured worker for reasons other than for cause").

Nevertheless, the statute does prohibit the termination of employment because the employee has invoked the workers' compensation system. ORS 659A.040. Plaintiff argues he was "discharged because he refused to sign a document in conflict with his right to reinstatement," which shows he was discharged for invoking the workers' compensation system. Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J. at 5.

Plaintiff offers no evidence that he refused to sign the form because he believed it to be contrary to his reinstatement rights. He testified, "[T]o me what it meant, they have a right to change my work or change my salary or whatever they want to do and – maybe I'm wrong." Manesh Dep. 32:8-11. Plaintiff did not testify that he thought it meant he was signing away his right to a job. Accordingly, any inference plaintiff would have me draw that he was

---

[5]Plaintiff also implies in a footnote that TEL's policy of terminating employment when leave exceeds the length of the service or after 180 days of leave is a violation of ORS 659A.043. In fact, the Bureau of Labor and Industries' regulation and guidance state that it is not. See OAR 839-006-0150 (an employee does not lose his reinstatement rights if "[a]n employer discharges all employees who are off the job for a certain amount of time and discharges the injured worker under this policy"); and Injured Worker Rights: Questions & Answers, http://www.oregon.gov/BOLI/TA/T_FAQ_Tainjwkr.shtml, last visited February 12, 2006 ("Q. I have a policy which provides that anybody who is gone from work for 30 days or more is automatically terminated. Can I terminate an injured worker under this policy? A. You may, but the worker still retains reinstatement/reemployment rights.").

Page 8 - OPINION AND ORDER

discriminated against for invoking the workers' compensation system because he refused to sign the "Leave Without Pay Request" is non-existent.

Even if plaintiff offered evidence that he was concerned about the form conflicting with his statutory reinstatement rights at the time he was asked to sign it, I do not find the form to be contrary to the statute. The form has no effect on plaintiff's reinstatement rights. The form does not require plaintiff to sign away his right to request reinstatement, it merely warns that employees taking leave without pay are not "guaranteed a job upon their return." Aff. of Glenn Solomon, Ex. 1. The right to reinstatement exists if several conditions are met, as set forth in ORS 659A.043. The employee must make a timely demand for reinstatement, the position must still exist, and the position must be one the employee is physically able to perform. OAR 839-006-0130. Accordingly, the statement in the form is not inaccurate.

In addition, at the bottom of the form, written in bold type, is the phrase, "I understand upon commencement of a leave of absence, there is no promise or guarantee of any job position upon return from leave, even if I return early, except as provided under law." Aff. of Glenn Solomon, Ex. 1 (emphasis added).

In sum, plaintiff presents no evidence that he refused to sign the "Leave Without Pay Request" form because it was contrary to his reinstatement rights, and he has not persuaded me that the form conflicted with those rights at all. As a result, he has not raised a genuine issue of material fact that he was discharged for invoking the workers' compensation system.

Indeed, plaintiff is unable to point to any evidence of discrimination. He does not complain of any animus against him, he does not assert that positions became available for which he was qualified, or that his supervisors treated him poorly. In fact, when he was told to go home

Page 9 - OPINION AND ORDER

on February 7, 2005, plaintiff testified that his supervisors were "very nice" to him, Manesh Dep. 48:22, and when asked whether the company treated him unfairly in any way, plaintiff testified only that his "managers were nice." Id. 66:2-5. Accordingly, plaintiff presents no evidence to support a causal connection between his filing of a workers' compensation claim and his termination and, accordingly, this claim fails.

## CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (#13) is granted and this case is dismissed.

IT IS SO ORDERED.

Dated this ____13th_____ day of February, 2007.

                                                  /s/ Garr M. King
                                                  Garr M. King
                                                  United States District Judge